# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### MONROE DIVISION

| | | |
|---|---|---|
| **LUV N CARE LTD.** | * | **CIVIL ACTION NO.  16-0641** |
| **VERSUS** | * | **JUDGE ROBERT G. JAMES** |
| **S C PRODUCTS INC ET AL.** | * | **MAG. JUDGE KAREN L. HAYES** |

## MEMORANDUM RULING AND REPORT AND RECOMMENDATION

Before the undersigned Magistrate Judge, on reference from the District Court, is a motion to dismiss for improper venue and lack of personal jurisdiction, or, in the alternative, to transfer venue, [doc. #13], filed by Defendants Michael McGinley and S.C. Products Inc. Also before the court is a motion to reinstate stay, [doc. #41], filed by Plaintiff Luv N Care, Ltd. For reasons explained below, it is recommended that Defendants' motion be **GRANTED** in part. Plaintiff's motion to reinstate stay is **DENIED** as **MOOT**.

## Factual and Procedural Background

Plaintiff Luv N Care, Ltd. ("LNC") and Defendants S.C. Products, Inc. ("SCP") and its founder, Michael McGinley, market and sell various baby products. The baby product at issue in this case is called a "rinse pail," which is designed to rinse shampoo from a child's head without getting soap into the child's eyes.

According to LNC's complaint, sometime prior to March 2012, SCP began selling a rinse pail called a Shampoo Rinse Cup (the "first SCP pail"). The first SCP pail had a "divider" down the center, preventing it from being stacked with other rinse pails. The first SCP pail is patented

1

under Patent number 7,441,675 (the "'675 Patent"). In March 2012, LNC began selling its version of a rinse pail, known as the Nuby Tear-Free Rinse Pail (the "LNC pail"). The LNC pail did not have a divider down the center, allowing it to be stacked with other pails. Then, sometime after March 2012, SCP marketed and sold a second rinse pail which, like the LNC pail, did not contain a divider and could be stacked (the "second SCP pail"). The second SCP pail is patented under Patent number 8,636,178 (the "'178 Patent").

On March 30, 2016, McGinley and SCP filed a patent infringement action against LNC in the Western District of Missouri, asserting that LNC has infringed and continues to infringe the '178 Patent by importing, making, using, offering to sell, and/or selling the LNC rinse pail. *McGinley et al. v. Luv n' care, Ltd.*, 16-cv-283 (W.D. Mo. 2016) (the "Missouri Case"). LNC filed a counterclaim seeking a declaratory judgment of non-infringement and unenforceability of the '178 Patent.

On May 10, 2016, LNC filed the instant complaint for, *inter alia*, unfair competition, trade dress infringement, and false advertising alleging that Defendants have engaged in a joint venture and enterprise to unlawfully and unfairly compete with LNC in the marketing, promotion, and/or sale of the second SCP pail (the "Louisiana Case"). [doc. #1, ¶ 26]. Specifically, LNC asserts that the second SCP pail is a "knock-off" of the LNC pail. *Id.* ¶¶ 49, 50. LNC seeks an injunction, damages, and a declaration that its rinse pail does not infringe the '675 Patent and another patent (the "'895 Patent") owned by McGinley.

On May 27, 2016, LNC filed a motion to dismiss in the Missouri Case for lack of personal jurisdiction and for improper venue, or, in the alternative, to transfer the case to the Western District of Louisiana. Shortly thereafter, on June 6, 2016, McGinley and SCP filed a

2

motion to dismiss in the Louisiana Case for improper venue and for lack of personal jurisdiction over McGinley, or, in the alternative, to transfer the case to the Western District of Missouri. [doc. #13].

On July 15, 2016, the undersigned issued an order staying the Louisiana Case, pending the outcome of the motion to dismiss and/or for transfer pending in the Missouri Case. [doc. #28]. On February 17, 2017, the Western District of Missouri denied LNC's motion, finding that venue was proper in Missouri and that it had personal jurisdiction over LNC. Accordingly, on February 28, 2017, this court issued an order lifting the stay. [doc. #37].

On March 7, 2017, LNC filed a motion to reinstate stay. [doc. #41]. LNC argues that this case should be stayed pending the outcome of the United States Supreme Court's ruling in *TC Heartland, LLC v. Kraft Foods Group Brands LLC*, 134 S.Ct. 614 (cert. granted Dec. 14, 2016). The question before the Supreme Court is "[w]hether 28 U.S.C. § 1400(b) is the sole and exclusive provision governing venue in patent infringement actions and is not to be supplemented by 28 U.S.C. § 1391(c)." *Id.* In holding that venue was proper, the Western District of Missouri relied, in part, on the Federal Circuit's holding in *TC Heartland*. Arguing the same grounds, LNC also filed a motion to stay in the Missouri Case, but the Western District of Missouri denied that motion on March 31, 2017.[1]

These matters are now ripe for decision.

## Transfer Under the First-to-File Rule

---

[1] In denying LNC's motion to stay, the Missouri court held that, "[r]egardless of the district in which the trial of this action will eventually be held, disclosures and discovery can proceed in any district." *McGinley et al. v. Luv v' care, Ltd.*, 16-cv-283 (W.D. Mo. 2016) (doc. #38, p. 2).

Defendants argue that transfer to the Western District of Missouri is warranted under the "first-to-file" rule. "Under the first-to-file rule, when related cases are pending before two federal courts, the court in which the case was last filed may refuse to hear it if the issues raised by the cases substantially overlap." *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 603 (5th Cir. 1999). "The concern manifestly is to avoid the waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result." *West Gulf Maritime Ass'n v. ILA Deep Sea Local 24*, 751 F.2d 721, 729 (5th Cir. 1985).

When a party moves to transfer under the first-to-file rule, the second-filed court must examine the two pending cases to see if the subject matter "might substantially overlap." *Cadle Co.*, 174 F.3d at 606. The first-to-file rule "does not, however, require the cases be identical," but merely that there is a "substantial overlap" in issues and parties. *Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 950 (5th Cir. 1997). If the likelihood of substantial overlap exists, then the proper course of action is for the second-filed court to transfer the case to the first-filed court. *Id.* The first-filed court can then decide whether the second suit filed must be dismissed, stayed, or transferred and consolidated. *Cadle Co.*, 174 F.3d at 606; *Sutter Corp. v. P&P Indus., Inc.*, 125 F.3d 914, 920 (5th Cir. 1997). A party can only avoid application of the first-to-file rule by demonstrating the presence of "compelling circumstances" that caution against the transfer. *Mann Mfg., Inc. v. Hortex, Inc.*, 439 F.2d 403, 407 (5th Cir. 1971).

The Court easily concludes that the subject matter of the Missouri Case and the Louisiana Case substantially overlap. In the Missouri Case, SCP and McGinley assert that the LNC pail infringes the '178 Patent, which patents the second SCP pail. In the Louisiana Case, LNC asserts

4

that the second SCP pail is a "knock-off" of the LNC pail, resulting in various violations of the

Lanham Act, 15 U.S.C. §§ 1501, *et seq* and the Louisiana Unfair Trade Practices Act

("LUTPA"). In both cases, LNC also seeks a declaration that the LNC pail does not infringe

McGinley's patents. In other words, both actions concern (1) the same parties, (2) the same

products, and (3) same or similar claims.

LNC argues that the two cases are dissimilar because the Louisiana Case concerns

violations of the Lanham Act and LUTPA, whereas the Missouri Case is a patent infringement

action. LNC contends that the Lanham Act and LUTPA have "separate tests for liability and

separate defenses" from the Missouri patent infringement action. *See* doc. #18, p. 16. These

arguments are unpersuasive, and ignore the crux of the Court's inquiry under the first-to-file rule.

"All that need be present is that the two actions involve closely related questions or common

subject matter, or that the core issues substantially overlap." *Tex. Instruments Inc. v. Micron

Semiconductor, Inc.*, 815 F.Supp. 994, 996 (E.D. Tex. 1993). The cases need not be identical to

be duplicative. *Mann Mfg., Inc.*, 439 F.2d at 407; *Needbasedapps, LLC v. Robbins Research

Intern., Inc.*, 926 F.Supp. 2d 907, 914 (W.D. Tex. 2013) (noting that "the 'crucial inquiry' . . . is

whether there is a 'likelihood of substantial overlap' between the two actions, and that this rule

"does not require that the claims or even the parties be identical."). It is evident that the patent

infringement, Lanham Act, and LUTPA claims all share a common subject matter (the same two

products and parties) and have a substantial overlap of factual questions (whether either pail is

being unlawfully marketed, promoted, and/or sold).[2] Moreover, in both cases, LNC seeks a

---

[2]  For example, to support a trade dress infringement claim under the Lanham Act, LNC
alleges that "Defendants have created a knock-off copy of LNC's distinctive rinse pail product
configuration without authority or permission from LNC." [doc. #1, ¶ 80]. To support a false

declaration that its rinse pail does not infringe McGinley's patents. *See, e.g.*, *Cal. Sec. Co-Op, Inc. v. Multimedia Cablevision, Inc.*, 897 F.Supp. 316, 317 (E.D. Tex. 1995) (additional causes of action in second suit were differences of "form rather than substance"); *Fuller v. Abercrombie & Fitch Stores, Inc.*, 370 F.Supp.2d 686, 689-90 (E.D. Tenn. 2005) (substantial overlap even though second action involved a claim not included in the first action because both claims "contest[ed] the same issue.").

Furthermore, allowing the Louisiana Case to proceed would potentially result in "rulings which may trench upon the authority of sister courts." *See West Gulf*, 751 F.2d at 728. For example, this court could find that the second SCP pail is a "knock-off" of the LNC pail. The Missouri court, on the other hand, may conclude that the LNC pail is infringing on the patented design of the second SCP pail. Majority, if not all, of LNC's LUTPA and Lanham Act claims rise and fall with Defendants' patent infringement claim. Said a different way, if the LNC pail is infringing McGinley's patent(s), then most (or all) of LNC's claims necessarily fail. *See Actsoft, Inc. v. Alcohol Monitoring Systems, Inc.*, No. 8:08-cv-00628, 2008 WL 2266254, *1 (M.D. Fla. June 3, 2008) (transferring Lanham Act case to patent infringement case because the resolution of the Lanham Act claim required determination of whether Plaintiff was entitled to manufacture

---

advertising claim, LNC alleges that SCP uses the knock-off rinse pail "to lure consumers to various e-commerce sites where SCP [falsely] purports to offer the knock-off product for sale," leading consumers "to be confused into believing they are being offered the LNC rinse pail." *Id.* ¶ 50. To support a false representation claim, LNC alleges that "[c]onsumers ordering Defendants' knock-off copy of LNC's rinse pail product configuration are likely to be confused into believing they are ordering LNC's rinse pail when in fact they are ordering the knock-off copy." *Id.* ¶ 102. Lastly, to support a LUTPA claim, LNC pleaded that "Defendants' infringement of LNC's distinctive trade dress, false advertising and bait-and-switch misrepresentation as detailed herein constitute unfair and deceptive practices prohibited by" LUTPA. *Id.* ¶ 108. These claims ask the same core question as the Missouri patent infringement claim: whether either pail is infringing the other.

the product in the first place).

Accordingly, this case should be transferred to the Western District of Missouri under the first-to-file rule. The Court does not address, and expresses no opinion on, whether a transfer pursuant to 28 U.S.C. § 1404(a) or 1406(a) would be proper,[3] or whether it has personal jurisdiction over defendant McGinley.

**Conclusion**

For the above-stated reasons,

Plaintiff's motion to reinstate stay is, [doc. #41,] is DENIED as MOOT.[4]

IT IS RECOMMENDED that Defendants' motion for transfer pursuant to the first-to-file rule, [doc. #13], be GRANTED, and the case be transferred to the Western District of Missouri.

IT IS FURTHER RECOMMENDED that the District Court decline to rule on Defendants' motion to transfer pursuant to 28 U.S.C. §§ 1404(a) and 1406(a), and Defendants' motion to dismiss for improper venue and lack of personal jurisdiction pursuant FED. R. CIV. P. 12(b)(2) and (3).

---

[3] Other district courts have concluded that a motion to transfer pursuant to the first-to-file rule does not depend on the presence or absence of the 1404(a) considerations. *David v. Signal Intern., LLC,* No. 08-1220, 2015 WL 3603944 (E.D. La. June 5, 2015) ("The first-to-file rule is a distinct procedural mechanism for transferring venue)*; Brown v. Peco Foods, Inc.*, No. 4:07cv99-KS-MTP, 2008 WL 4145428 (S.D. Miss. Feb. 25, 2008).

[4] As stated above, the first-to-file rule "not only determines which court may decide the merits of substantially similar issues, but also establishes which court may decide whether the second suit filed must be dismissed, **stayed** or transferred and consolidated." *Sutter Corp.*, 125 F.3d at 920 (emphases added). As the first-to-file court, the Western District of Missouri already denied LNC's motion to stay. Under current precedent, venue is proper in the Western District of Missouri. Should venue become improper after the Supreme Court's holding in *TC Heartland*, the Missouri District Court can decide whether the cases should proceed in Missouri or elsewhere.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, this 4th day of April 2017.

KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE

8